THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACKSON NOAH,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>T-MOBILE USA, INC.,<br><br>　　　　　　Defendant. | CASE NO. C24-0885-JCC<br><br>ORDER |

Before the Court is Defendant T-Mobile USA, Inc.'s ("T-Mobile") motion to compel arbitration (Dkt. No. 17). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained below.

Plaintiff alleges that Defendant's service, DIGITS, violated various state and federal laws. (Dkt. No. 1-1 at 12–17.) DIGITS permitted users, including Plaintiff, to answer a single phone line on multiple devices. (*See id.* at 10.) Plaintiff also alleges that the application allowed hackers to receive and delete text messages to his phone number, which in turn helped them access his bank account. (*Id.* at 11.) Plaintiff says these hackers stole small amounts of money over time that totaled more than $230,000. (*Id.*) In his complaint, Plaintiff claims that Defendant defectively designed DIGITS, negligently rushed DIGITS to market, and failed to protect

consumers. (*Id.* at 4, 12, 14.)[1]

Defendant now moves to compel arbitration of all claims pursuant to 9 U.S.C. § 4 and Defendant's Terms and Conditions ("T&Cs"). (*See generally* Dkt. No. 17.) Plaintiff agreed to the T&Cs when he first signed up for phone service in 2017. (Dkt. No. 19 at 8.)[2] And he signed the T&Cs again when he added services in 2020 and 2021. (*Id.* at 263–64, 266.) *And* he acknowledged the T&Cs once more in a clickwrap agreement to download DIGITS in 2021. (Dkt. Nos. 1-1 at 10, 19 at 5); *see also Kaplan v. Athletic Media Co.*, 705 F. Supp. 3d 992, 1001–03 (N.D. Cal. 2023) (finding that similar clickwrap provided conspicuous notice and unambiguous assent). There is no dispute that Plaintiff used DIGITS subject to Defendant's T&Cs, which include an arbitration clause. (*See* Dkt. Nos. 17 at 9–10, 22 at 5.)

Defendant's T&Cs have been amended over time, but all versions relevant here state, in bold and capital letters, "**YOU AND WE EACH AGREE THAT . . . ANY AND ALL CLAIMS OR DISPUTES . . . WILL BE RESOLVED BY . . . BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**" (Dkt. No. 19 at 14, 46–47, 77, 108, 140, 173, 195, 231–32.) Customers may opt out of the arbitration agreement, (*see* Dkt. No. 19 at 15), but it is undisputed that Plaintiff did not. (*See* Dkt. Nos. 17 at 8, 19 at 5, 22 at 5.)

The arbitration clause contains a third relevant agreement that purports to delegate gateway issues to the arbitrator. (*See* Dkt. No. 19 at 14–16); *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) (describing delegation clauses and gateway issues). Contracting parties may delegate gateway issues, including whether an arbitrator or a court should decide the agreement's validity, by "clear and unmistakable

---

[1] Plaintiff originally brought claims against Apple and Google for hosting DIGITS on their respective application stores, but those Defendants have since been voluntarily dismissed. (*See* Dkt. No. 11 at 2.)

[2] There is some confusion in the record about Plaintiff's name. "Joseph Otis" and "Jackson Noah" are given in various places, but the parties do not dispute that both refer to Plaintiff. (*See* Dkt. Nos. 17 at 6 n.1.)

ORDER
C24-0885-JCC
PAGE - 2

evidence" of their intent. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019). Such an agreement is severable from the arbitration clause and the T&Cs, and thus must be analyzed as a distinct contract between the parties. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010). Here, the T&Cs incorporate the American Arbitration Association's ("AAA") Consumer Arbitration Rules, (Dkt. No. 19 at 15), which provide that the arbitrator has jurisdiction over all questions of arbitrability. AAA, *Consumer Arbitration Rules*, R-14(a) (Sept. 1, 2014); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (holding AAA Rules provide clear and unmistakable evidence of the intent to delegate gateway issues). Additionally, the T&Cs broadly assign "**ANY AND ALL CLAIMS OR DISPUTES**" to the arbitrator, which would necessarily include a dispute over the arbitrator's jurisdiction. (*See* Dkt. No. 19 at 14.) Finally, Defendant's T&Cs provide that the arbitrator has the power to rule on their own jurisdiction. (*Id.* at 16.) Plaintiff and Defendant have thus clearly agreed to delegate gateway issues to the arbitrator, not this Court.

       The Federal Arbitration Act ("FAA") limits a court's review to deciding whether an arbitration clause (1) is valid and (2) covers the dispute at issue. *See* 9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The Court's role is even more circumspect where the parties have agreed to delegate gateway issues to the arbitrator. *See Rent-A-Center*, 561 U.S. at 72. Because there are multiple agreements that could be disputed— the T&Cs, the arbitration clause, and the delegation provision—a party must challenge the delegation agreement specifically to secure review by the court. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009–10 (9th Cir. 2023). In *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, for example, the plaintiff referenced the AAA rules in their unconscionability challenge, which was sufficient. 97 F.4th 1190, 1199–1200 (9th Cir. 2024). "[U]nless [Plaintiff] challenged the delegation provision specifically, we must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. If an arbitration agreement is so enforced, the litigation will be stayed.

*See* 9 U.S.C. § 3.

Plaintiff here does not challenge delegation specifically—he does not even mention it once in his opposition to arbitration. (*See generally* Dkt. No. 22.) Nor does Plaintiff mention any mitigating circumstance that might undermine the delegation provision, such as his sophistication as a consumer. *Cf. Brennan*, 796 F.3d 1130–31 (reserving the question of whether sophistication is relevant to delegation); *Fli-Lo Falcon*, 97 F.4th at 1200–01 (considering a sophistication-based challenged to a delegation provision). Instead, Plaintiff claims the *entire* arbitration agreement is a "contract of adhesion" that is procedurally and substantively unconscionable. (Dkt. No. 22 at 10–12.) Therefore, "[P]laintiff[] ha[s] not stated explicitly that they believe the Delegation Provision itself (as opposed to the Arbitration agreement or the . . . Agreement as a whole) is unconscionable." *Fli-Lo Falcon*, 97 F.4th at 1200. His arguments[3] at this stage are only proper for arbitration, not litigation.

For the foregoing reasons, T-Mobile's motion to compel arbitration (Dkt. No. 17) is GRANTED. This action is STAYED pending arbitration. The parties are ORDERED to submit a joint status report within fourteen (14) days of the completion of arbitration proceedings.

DATED this 25th day of October 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[3] For example, in opposing arbitration, Plaintiff disputes choice of law despite the T&Cs, (*see* Dkt. No. 19 at 8), references outdated class action precedent, *see Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008), overruled by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), focuses on the effect rather than the terms of the T&Cs, and cites cases that ultimately compelled arbitration, *see Bennett v. T-Mobile USA, Inc.*, 2024 WL 229580, slip op. at 16 (W.D. Wash. 2024). (*See* Dkt. No. 22 at 9–10.)